COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-211-CV

 

 

IN THE
INTEREST OF J.W., A CHILD

 

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








Appellants Lupe C. and Bruce W. appeal the trial
court=s
judgment terminating their parental rights to their child, James.[2]  In two issues, Lupe challenges the legal and
factual sufficiency of the evidence to support the trial court=s family
code section 161.001(1) termination ground findings and the trial court=s
finding that termination of Lupe=s
parental rights to James is in James=s best
interest.  Bruce=s
counsel has filed a motion to withdraw as counsel and a brief in support of
that motion, averring that Bruce=s appeal
is frivolous.  We will affirm the trial
court=s
judgment terminating Lupe=s and Bruce=s
parental rights to James and grant Bruce=s
counsel=s motion
to withdraw.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

Lupe is the mother of (1) Gina, who was
twenty years old at the time of trial; (2) Alex, who was born in January
1990; (3) Anthony, who was born in March 1991; (4) James, who was
born in December 2005; and (5) April, who was born in March 2007.  Lupe married Carlos C. in 1992.  They separated in 2001, but they remain
legally married.  Carlos, whom Lupe has
not had any contact with for seven years, is the presumed father of James.  Bruce, who is the alleged biological father
of James, admitted at trial that he is the father of James and April.

Lupe lived with Carlos before the 2001
separation, but he was gone Ahalf the
time.@  Carlos used illegal drugs, and he was Aall
drugged up@ when he would return home.  Lupe began using illegal drugs sometime in
1997 or 1998.








James tested positive for cocaine when he was
born.  Lupe also tested positive for
cocaine when James was born, but she claimed that she had smoked a cigarette
thatCunbeknownst
to herChad been
laced with cocaine.  Child Protective
Services (ACPS@) did
not remove James from Lupe=s care
when he was born because CPS developed an initial safety plan involving Lupe=s
mother, who agreed to care for James. 
CPS ultimately lost contact with the family.

CPS received a referral on April 3, 2007, that
April had tested positive for cocaine when she was born.  Lupe also tested positive for cocaine when
April was born, but she claimed that she had accidentally ingested the cocaine
when she took two capsules of aspirin. 
CPS performed an investigation and found that there was AReason
to Believe@ for physical abuse and
neglectful supervision regarding April and James.  CPS consequently removed James and April from
Lupe=s care
on April 3, 2007, and the next day Appellee Department of Family and Protective
Services (ADFPS@) filed
its petition for protection of a child, for conservatorship, and for
termination in a suit affecting the parent-child relationship.  April died of Sudden Infant Death Syndrome
the following month.








CPS developed identical service plans for both
Lupe and Bruce, but neither one completed the plans.  Lupe attended only thirteen of forty-four
scheduled visits with James, and she performed only one of the eight drug tests
that CPS requested she take; the test came back positive for cocaine.  In October or November 2007, Lupe admitted to
Paul Stampp, the CPS caseworker involved in James=s case,
that she used cocaine after she had a fight with Bruce, who had asked her for
money to buy drugs.  Bruce used cocaine
during the pendency of the twelve-month case about twice a month for five or
six months.

The bench trial took place in late April and
early May 2008.  Stampp testified in part
that Lupe and Bruce moved three times during the pendency of the case and that
they were evicted from two of the residences. 
CPS could not locate Lupe and Bruce from August 2007 through October or
November 2007.  Lupe was living with her
daughter Gina at the time of trial. 
Bruce testified that he has Aprobably
tried every drug in the world,@ that he
has been hospitalized for suicidal tendencies, that he has convictions for
possession of a controlled substance and assault, that he was taking multiple
prescription drugs, and that he could not provide stable housing for James if
James was returned to him.  James was
living with a foster family that intended to adopt him if the trial court
terminated Lupe=s and Bruce=s
parental rights.








On May 6, 2008, the trial court signed an order
terminating the parental rights of Lupe, Bruce, and Carlos to James.  The trial court found by clear and convincing
evidence that Lupe and Bruce each knowingly placed or knowingly allowed James
to remain in conditions or surroundings that endangered his physical or
emotional well-being, that Lupe and Bruce each engaged in conduct or knowingly
placed James with persons who engaged in conduct that endangered James=s
physical or emotional well-being, and that termination of the parent-child relationship
between Lupe and James and between Bruce and James is in James=s best
interest.[3]  See Tex. Fam. Code Ann. ' 161.001(1)(D),
(E), (2) (Vernon 2008).  The trial court
also found by clear and convincing evidence that Carlos constructively
abandoned James and that termination of the parent-child relationship between
Carlos and James is in James=s best
interest.  See id. ' 161.001(1)(N).  These appeals followed.

                       III.  BURDEN OF PROOF AND STANDARD
OF REVIEW








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes in
favor of the parent.  Holick, 685
S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).








Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ 
Id. ' 101.007
(Vernon 2008).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  Id.








We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the factfinder=s province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.

In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provisions of section
161.001(1) and that the termination of the parent-child relationship would be
in the best interest of the child.  C.H.,
89 S.W.3d at 28.  If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction in the truth of its
finding, then the evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.

                 IV.  EVIDENTIARY SUFFICIENCY
OF ENDANGERMENT FINDINGS

In her first issue, Lupe argues that the evidence
is legally and factually insufficient to support the trial court=s family
code section 161.001(1)(D) and (E) endangerment findings.








Endangerment means to expose to loss or injury,
to jeopardize.  J.T.G., 121 S.W.3d
at 125.  The trial court may order
termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Tex.
Fam. Code Ann. ' 161.001(1)(D).  Under subsection (D), it is necessary to
examine evidence related to the environment of the child to determine if the
environment was the source of endangerment to the child=s
physical or emotional well-being.  In
re D.T., 34 S.W.3d 625, 632 (Tex. App.CFort
Worth 2000, pet. denied).  Conduct of a
parent in the home can create an environment that endangers the physical and
emotional well-being of a child.  J.T.G.,
121 S.W.3d at 125.

The trial court may order termination of the
parent-child relationship if it finds by clear and convincing evidence that the
parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangers the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s
physical or emotional well-being was the direct result of the parent=s
conduct, including acts, omissions, and failures to act.  J.T.G., 121 S.W.3d at 125.  Termination under subsection (E) must be
based on more than a single act or omission; a voluntary, deliberate, and
conscious course of conduct by the parent is required.  Id.; D.T., 34 S.W.3d at 634.













To support a finding of endangerment, the parent=s
conduct does not necessarily have to be directed at the child, and the child is
not required to suffer injury.  Boyd,
727 S.W.2d at 533.  The specific danger
to the child=s well-being may be inferred
from parental misconduct alone, and to determine whether termination is
necessary, courts may look to parental conduct both before and after the child=s
birth.  Id.; In re D.M., 58
S.W.3d 801, 812 (Tex. App.CFort
Worth 2001, no pet.).  A mother=s use of
illegal drugs during pregnancy may amount to conduct that endangers the
physical and emotional well-being of the child. 
J.T.G., 121 S.W.3d at 125. 
A parent=s decision to engage in illegal
drug use during the pendency of a termination suit, when the parent is at risk
of losing a child, supports a finding that the parent engaged in conduct that
endangered the child=s physical or emotional
well-being.  In re J.A., No.
02-05-00454-CV, 2006 WL 3114434, at *5 (Tex. App.CFort
Worth Nov. 2, 2006, no pet.) (mem. op.). 
Thus, parental and caregiver illegal drug use supports the conclusion
that the children=s surroundings endanger their
physical or emotional well-being.  J.T.G.,
121 S.W.3d at 125; In re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan
Antonio 1998, pet. denied).  A factfinder
may also reasonably infer from a parent=s failure
to attend scheduled drug screenings that the parent was avoiding testing
because the parent was using drugs.  In
re W.E.C., 110 S.W.3d 231, 239 (Tex. App.CFort
Worth 2003, no pet.).  As a general rule,
conduct that subjects a child to a life of uncertainty and instability
endangers the child=s physical and emotional
well-being.  S.D., 980 S.W.2d at
763.

Because the evidence pertaining to subsections
161.001(1)(D) and (E) is interrelated, we conduct a consolidated review.  In re T.N.S., 230 S.W.3d 434, 439
(Tex. App.CSan Antonio 2007, no pet.); J.T.G.,
121 S.W.3d at 126.  The evidence shows
that Lupe used illegal drugs before James was born.  She testified that she began using illegal
drugs sometime in 1997 or 1998.  Carlos,
her husband, used illegal drugs too and would come home Aall
drugged up.@ 
Lupe agreed that she exposed her children to drug use in their home.

Lupe used illegal drugs during her
pregnancy.  She tested positive for
cocaine when James was born in 2005 and when April was born in 2007.  Both James and April tested positive for
cocaine when they were born.  Lupe
claimed that she unknowingly ingested the cocaine in both instances, but the
trial court, as the factfinder, weighed Lupe=s
credibility and could have chosen to disbelieve her explanations for why she
tested positive for cocaine when both James and April were born.  Lupe testified that Bruce brought cocaine
into her home on one occasion.  The
evidence also revealed that Lupe brought friends who used drugs over to the
residence.








Lupe used illegal drugs after CPS removed James
from her care.  During the pendency of
the case, Stampp requested that Lupe take eight drug tests.  But Lupe only took one, and it came back
positive for cocaine.  The trial court
could have reasonably inferred from Lupe=s
failure to attend the drug screenings that she avoided the testing because she
was using drugs.  See W.E.C., 110
S.W.3d at 239.  Indeed, Lupe told Stampp
sometime in October or November 2007 that she could not take a drug test
because she had used cocaine.  Bruce also
used cocaine during the pendency of the case about twice a month for five or
six months.  According to Stampp, Lupe
has demonstrated an inability to provide a safe environment for James.

Lupe contends that the evidence is legally and
factually insufficient to support the trial court=s
endangerment findings because the facts of this case are different from the facts
of three other cases in which the appellate courts determined that the evidence
was sufficient to support the trial court=s
endangerment findings.[4]  The factual distinctions between this case
and the other cases do not render the evidence in this case legally and
factually insufficient.








Considering Lupe=s drug
use before James was born, her drug use during her pregnancy with James, her
continued drug use during the pendency of the case, and the evidence of her
children=s
exposure to drugs, the trial court was entitled to find that Lupe engaged in
conduct or created an environment that endangered James=s
physical and emotional well-being.  See
J.T.G., 121 S.W.3d at 125; D.M., 58 S.W.3d at 812; J.A., 2006
WL 3114434, at *5.  Giving due deference
to the trial court=s findings, we hold that a
reasonable trier of fact could have formed a firm belief or conviction that
Lupe knowingly placed James in conditions and engaged in conduct that
endangered his physical or emotional well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(D),
(E); J.P.B., 180 S.W.3d at 573; C.H., 89 S.W.3d at 28.  Accordingly, we hold that the evidence is
legally and factually sufficient to support the trial court=s
environmental endangerment and course of conduct endangerment findings.  We overrule Lupe=s first
issue.

                   V.  EVIDENTIARY SUFFICIENCY
OF BEST INTEREST FINDING

In her second issue, Lupe argues that the
evidence is legally and factually insufficient to support the trial court=s best
interest finding.








There is a strong presumption that keeping a
child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child=s best interest.  Tex. Fam. Code Ann. '
263.307(a) (Vernon 2008).  The following
factors should be considered in evaluating the parent=s
willingness and ability to provide the child with a safe environment:

(1) the child=s age and physical and
mental vulnerabilities;

 

(2) the frequency and
nature of out‑of‑home placements;

 

(3) the magnitude,
frequency, and circumstances of the harm to the child;

 

(4) whether the child has
been the victim of repeated harm after the initial report and intervention by
the department or other agency;

 

(5) whether the child is
fearful of living in or returning to the child=s home;

 

(6) the results of
psychiatric, psychological, or developmental evaluations of the child, the
child=s parents, other family
members, or others who have access to the child=s home;

 

(7) whether there is a
history of abusive or assaultive conduct by the child=s family or others who
have access to the child=s home;

 

(8) whether there is a
history of substance abuse by the child=s family or others who have access to the child=s home;

 

(9) whether the
perpetrator of the harm to the child is identified;

 

(10) the willingness and
ability of the child=s family to seek out,
accept, and complete counseling services and to cooperate with and facilitate
an appropriate agency=s close supervision;

 

(11) the willingness and
ability of the child=s family to effect
positive environmental and personal changes within a reasonable period of time;








(12) whether the child=s family demonstrates
adequate parenting skills, including providing the child and other children
under the family=s care with:

 

(A) minimally adequate
health and nutritional care;

 

(B) care, nurturance, and
appropriate discipline consistent with the child=s physical and
psychological development;

 

(C) guidance and
supervision consistent with the child=s safety;

 

(D) a safe physical home
environment;

 

(E) protection from
repeated exposure to violence even though the violence may not be directed at
the child; and

 

(F) an understanding of
the child=s needs and
capabilities;  and

 

(13) whether an adequate
social support system consisting of an extended family and friends is available
to the child.

 

Id. ' 263.307(b); see
R.R., 209 S.W.3d at 116.

 








Other, nonexclusive factors that the trier of
fact in a termination case may use in determining the best interest of the
child include (a) the desires of the child, (b) the emotional and physical
needs of the child now and in the future, (c) the emotional and physical danger
to the child now and in the future, (d) the parental abilities of the
individuals seeking custody, (e) the programs available to assist these
individuals to promote the best interest of the child, (f) the plans for the
child by these or by the agency seeking custody, (g) the stability of the home
or proposed placement, (h) the acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one, and
(i) any excuse for the acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.








We have already detailed above the evidence of
Lupe=s
continuing course of illegal drug use, Bruce=s drug
use, and the evidence that James and April tested positive for cocaine when
they were born.  Regarding Lupe=s living
situation, she and Bruce moved three times during the pendency of the case, and
they were evicted from two of the residences. 
Lupe was living with her daughter Gina at the time of trial, though she
claimed that she was about to move out. 
Regarding Lupe=s completion of the service plan
that CPS formulated for her, the evidence shows that she did not complete
individual counseling, she did not complete parenting classes, she did not do a
psychological evaluation, she performed only one drug test, she did not provide
information that she was ever gainfully employed, and she attended only
thirteen of forty-four scheduled visits with James.[5]  Lupe testified that she Ablacks
out@ a lot
and that she does not read very well. 
Stampp opined that Lupe could not adequately provide for James=s
emotional, physical, mental, and spiritual needs, and Stampp reasoned that it
is in James=s best interest to terminate
Lupe=s
parental rights to James.  

As for James, at the time of trial, he was living
with a foster family that intended to adopt him if the trial court terminated
Lupe=s and
Bruce=s
parental rights.  James has bonded with
his foster parents.  Lupe testified that
she wanted DFPS or a family member to retain custody of James.








Considering the relevant statutory factors in
evaluating Lupe=s willingness and ability to
provide James with a safe environment and the Holley factorsCincluding
the emotional and physical needs of the child now and in the future, the
emotional and physical danger to the child now and in the future, the parental
abilities of the individuals seeking custody, and the acts or omissions of the
parent which may indicate that the existing parent‑child relationship is
not a proper one, all of which weigh in favor of terminationCwe
conclude that in light of the entire record, and giving due consideration to
evidence that the factfinder could have reasonably found to be clear and
convincing, a factfinder could reasonably have formed a firm belief or
conviction that termination of Lupe=s
parental rights to James is in James=s best
interest.  We hold that the evidence is
legally and factually sufficient to support the trial court=s
section 161.001(2) best interest finding. 
See Tex. Fam. Code Ann. ' 161.001(2).  Accordingly, we overrule Lupe=s second
issue.

                                 VI.  BRUCE=S FRIVOLOUS APPEAL

Bruce=s
court-appointed appellate counsel has filed a motion to withdraw as counsel and
a brief in support of that motion. 
Counsel=s brief and motion meet the
requirements of Anders by presenting a professional evaluation of the
record demonstrating why there are no reversible grounds on appeal and
referencing any grounds that might arguably support the appeal.  See Anders v. California, 386 U.S. 738,
741, 87 S. Ct. 1396, 1400 (1967); Mays v. State, 904 S.W.2d 920, 922 B 23
(Tex. App.CFort Worth 1995, no pet.).  This court has previously held that Anders
procedures apply in parental rights termination cases.  In re K.M., 98 S.W.3d 774, 776B77 (Tex.
App.CFort
Worth 2003, no pet.).  Bruce was given
the opportunity to file a pro se brief on his own behalf, but he did not do so.








In our duties as a reviewing court, we must
conduct an independent evaluation of the record to determine whether counsel is
correct in determining that the appeal is frivolous.  See Stafford v. State, 813 S.W.2d 503,
511 (Tex. Crim. App. 1991); Mays, 904 S.W.2d at 923.  Only then may we grant counsel=s motion
to withdraw.  See Penson v. Ohio,
488 U.S. 75, 82 B 83, 109 S. Ct. 346, 351 (1988).

We have carefully reviewed the appellate record
and counsel=s brief.  We agree that the appeal is wholly frivolous
and without merit.  We find nothing in
the record that might arguably support the appeal.  See Bledsoe v. State, 178 S.W.3d 824, 827
(Tex. Crim. App. 2005).  Therefore, we
grant Bruce=s appellate counsel=s motion
to withdraw.

                                          VII.  CONCLUSION








Having
overruled Lupe=s two issues, we affirm the
trial court=s judgment terminating the
parent-child relationship between Lupe and James.  Having determined that Bruce=s appeal
is wholly frivolous and without merit and having granted Bruce=s
appellate counsel=s motion to withdraw, we affirm
the trial court=s judgment terminating the
parent-child relationship between Bruce and James.

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: March 26, 2009 











[1]See Tex. R. App. P. 47.4.





[2]Pursuant to Texas Rule of
Appellate Procedure 9.8(b)(2), we use aliases 
for the names of the children.





[3]Regarding Bruce, the
trial court also made findings pursuant to family code sections 161.001(1)(N)
and 161.002(b)(1).





[4]See In re S.M.L.D., 150 S.W.3d 754, 757B59 (Tex. App.CAmarillo 2004, no pet.); J.T.G.,
121 S.W.3d at 126; J.A., 2006 WL 3114434, at *5B7.





[5]Stampp canceled two of
Lupe=s scheduled visits with
James.