NO. 07-08-0421-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 16, 2009

_____

IN THE INTEREST OF S.B.R., A CHILD

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 17,941; HONORABLE KEVIN C. HART, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Resa Gibson, appeals the termination of her parental rights to her minor child, S.B.R.[1] S.B.R. was born on March 23, 2007, and was ordered removed from Resa's care, after hearing, on April 5, 2007. The trial court entered an order terminating Resa's parental rights on October 10, 2008. It is from this order that Resa appeals.

Factual and Procedural Background

On March 19, 2007, Resa went to the Brownfield Regional Medical Center in regard to her pregnancy. While at the hospital, she took a drug screening test, which yielded a

_____

[1] The father's parental rights were also terminated, however, he did not appeal the judgment terminating his rights.

negative result for drugs. Later that same day, Resa was sent to the Levelland Covenant Hospital and another drug screening test was administered. The results of that test were positive for marijuana. S.B.R. was born on March 23, 2007. The Texas Department of Family and Protective Services (Department) received a report that Resa had given birth on the 23rd of March and that she had been using drugs and had tested positive on a drug screen.[2] As a result of obtaining this information, the Department opened an investigation on Resa. At the time the investigation was opened, Resa was thought to be residing with her mother, Linda Roberts. On March 27, 2007, the Department interviewed Resa at her mother's home. After being told that she had tested positive for marijuana, Resa stated that she had not smoked any marijuana but she had been in the presence of some people who were smoking marijuana. Resa then stated that the second-hand marijuana smoke could have accounted for her positive test. Resa was offered a drug test at that time but refused. During this meeting with Resa, S.B.R. was being cared for by Linda and the Department was not allowed in the Roberts's house and the meeting ended without the Department entering into the Roberts's home or seeing S.B.R.

Subsequently, on March 29, 2007, the Department filed an original petition for protection. After a hearing, the trial court granted temporary conservatorship to the Department. The Department later filed an amended petition for termination and it was upon this pleading that the case was subsequently tried.

---

[2] At trial, the source for the report that Resa was using drugs was never identified except that the Department had obtained copies of the drug screening from each hospital.

The record reflects that Resa had previously had a significant amount of contact with the criminal justice system. Beginning with a possession of marijuana charge while a juvenile, appellant had been charged and convicted as an adult of possession of cocaine, aggravated perjury, and forgery.[3] As a result of these multiple offenses, the record further reflects that, as of the date of the trial, Resa had been in custody for all but one month of S.B.R.'s life. Further, the record reflects that Resa had two other children before S.B.R. was born and that these children had either been removed from the home by the Department or voluntarily removed by agreement and/or voluntary relinquishment.

At the time of trial, September 16, 2008, the Department's live pleadings alleged that termination was in the child's best interest because Resa had committed the following predicate acts or omissions set forth in Texas Family Code section 161.001(1), paragraphs D, E, F, K, N, O, and P. See TEX. FAM. CODE ANN. § 161.001(1) (Vernon 2007).[4] After hearing the testimony of the witnesses for the Department and the testimony of Resa, the trial court entered an order terminating Resa's parental rights by finding by clear and convincing evidence that Resa had:

> 1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child (§ 161.001(1)(D));
>
> 2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child (§ 161.001(1)(E));

---

[3] At the time of trial, Resa was 23 years old.

[4] Further reference to the Texas Family Code willl be by reference to "section ___" or "§ ___."

3) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child (§ 161.001(1)(O)).

Additionally, as required by statute, the trial court found that termination was in the best interest of the child. See § 161.001(2).

Resa appeals the trial court's judgment of termination contending that the evidence was legally and factually insufficient to support the trial court's judgment that she had knowingly placed or allowed the child to remain in conditions or surroundings that endangered his physical or emotional well-being (§ 161.001(1)(D)) and had knowingly placed the child with a person, Linda Roberts, who engaged in conduct that endangered his physical and emotional well-being (§ 161.001(1)(E)). Resa also contends that the evidence is factually insufficient to support the trial court's judgment that Resa had engaged in conduct, namely using drugs and committing criminal acts that resulted in her incarceration, that endangered the child's physical and emotional well-being (§ 161.001(1)(E)); that she failed to comply with a court order that specifically established the actions necessary for her to obtain the child's return (§ 161.001(1)(O)); and that termination is in the best interest of the child (§ 161.001(2)). Disagreeing with some of Resa's contentions, we will affirm the trial court's judgment of termination.[5]

_____

[5] The judgment may be affirmed if it is supported by evidence sufficient to establish that one of the grounds listed in section 161.001(1) exists and that termination is in the best interest of the child, as required by section 161.001(2). See In re S.M.L.D., 150 S.W.3d 754, 756 (Tex.App.–Amarillo 2004, no pet.).

Standard of Review

Clear and Convincing Evidence

The natural right existing between a parent and a child is of such a degree as to be of constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). Because of the nature of this right, a trial court's findings in a termination case must be based upon clear and convincing evidence. See § 161.001. Clear and convincing evidence is defined as ". . . the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." See § 101.007. The clear and convincing burden of proof requires a higher level of appellate scrutiny in reviewing the legal and factual sufficiency of the evidence. In re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002) (legal sufficiency); In re C.H., 89 S.W.3d 17, 23 (Tex. 2002) (factual sufficiency).

Legal and Factual Sufficiency

When reviewing a trial for legal sufficiency, a reviewing court must look at all the evidence, in the light most favorable to the judgment, in order to determine whether the trier of fact could reasonably have formed a firm belief or conviction about the truth of the allegations lodged against the parent. See In re J.F.C., 96 S.W.3d at 265-66. Looking at the evidence in the light most favorable to the judgment means that the reviewing court must assume the fact finder resolved disputed fact issues in favor of its finding if a reasonable fact finder could do so. Id. at 266. A reviewing court should disregard all

5

evidence that a reasonable fact finder could have disbelieved or found to have been incredible. Id. This does not mean that a reviewing court should disregard all evidence that does not support the finding, for to disregard undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. Id. While conducting a legal sufficiency review, we are not allowed to weigh witness credibility issues that depend on appearance and demeanor of witnesses, for those witnesses are not present. See In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, an appellate court must defer to the fact finder's determinations, so long as those determinations are not themselves unreasonable. Id.

When assessing the evidence for factual sufficiency, under a clear and convincing burden of proof, we look at all the evidence the fact finder could reasonably have found to be clear and convincing. We then determine whether, on the entire record, the fact finder could have reasonably formed a firm belief or conviction of the truth of the allegations. See In re S.M.L.D., 150 S.W.3d at 757. In performing this evaluation, we consider whether disputed evidence is such that a reasonable fact finder could have resolved it in favor of its finding. Id. If, in light of the entire record, disputed evidence that a reasonable fact finder could not have resolved in favor of the finding is so significant as to prevent a fact finder reasonably from forming a firm belief or conviction of the truth of the finding, then the evidence is factually insufficient. Id. When conducting a factual sufficiency review, we must give due deference to the fact finder's findings and not supplant the fact finder's judgment with our own. See In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2005).

6

## Section 161.001(1)(E) Allegations

Resa contends, through her second and third issues, that the evidence is legally and factually insufficient to support the trial court's judgment that, either through placing the child with Linda or by her own conduct, Resa engaged in conduct which violated section 161.001(1)(E). When reviewing an allegation that a parent has been guilty of engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, one of the first issues to confront is the meaning of endanger. When examining the record for purposes of an evidentiary review under section 161.001(1)(E), endanger has been determined to mean to expose to loss or injury or to jeopardize. See In re M.C., 917 S.W.2d 268, 269 (Tex. 1996). Further, the courts have held that it is not necessary that the conduct be directed at the child or that the child actually suffers injury or even that the conduct constitutes a concrete threat of injury to the child. See In re M.J.M.L., 31 S.W.3d 347, 350 (Tex.App.–San Antonio 2000, pet. denied). The conduct proscribed involves not only acts, but includes omissions or failures to act. Id. at 351. Endangerment does not have to be established as an independent proposition but can be inferred from the parent's conduct alone. See Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). There is not a requirement of a causal connection between the parent's misconduct and any actual harm to the child resulting from that misconduct. See In re W.A.B., 979 S.W.2d 804, 808 (Tex.App.–Houston [14th Dist.] 1998, pet. ref'd), reversed on other grounds by, In re J.F.C., 96 S.W.3d at 265-66. Texas courts may look at what the parents did both before and after the child's birth to determine whether termination is necessary. See In re

T.N., 180 S.W.3d 376, 383 (Tex.App.–Amarillo 2005, no pet.). Imprisonment alone will not support termination of a parent's rights. See Boyd, 727 S.W.2d at 533. However, when imprisonment is coupled with a course of conduct including drug abuse, there may be support in finding that the parent engaged in a course of conduct which endangered the child's physical or emotional well-being. See In re K.C., 23 S.W.3d 604, 608 (Tex.App.–Beaumont 2000, no pet.). Conduct such as engaging in illegal activities subjects a child to uncertainty and instability because of the probability that its parent will be jailed thereby leaving the child alone and, as such, endangers the child's physical or emotional well-being. In re T.N., 180 S.W.3d at 383.

Analysis

The record reflects that, on the day the Department began actively investigating the situation involving S.B.R., the case worker, then in charge, conducted an interview with Resa outside her mother's home. The case worker testified that, during that interview, Resa admitted using cocaine until she found out she was pregnant. Upon further examination, the case worker stated that Resa did not say that she stopped using cocaine prior to becoming pregnant, rather Resa admitted using cocaine until she became personally aware that she was pregnant. During Resa's testimony, she denied making the statement. The record further reflects that Resa had been previously convicted of possession of cocaine. In addition, the record reflects that Resa's two older children had been the subject of previous actions by the Department. In each case, the ultimate result was that the child ended up being placed with and subsequently adopted by S.B.R.'s current foster parents. Resa was given two drug tests on March 19, 2007. One test result

8

was negative for drug usage while the second was positive for marijuana. Resa's statement to the case worker about the positive test was that, although she had not smoked marijuana, she could have tested positive because she was around people who were smoking marijuana. The record reflects that Resa's initial involvement with the law as a juvenile was for possession of marijuana. Additionally, on the day Resa told the case worker she had not smoked marijuana, she was offered a drug test and refused to take it. The record reflects that Resa has also been convicted of forgery and aggravated perjury. Resa's entire criminal history occurred between 2002 and the birth of S.B.R., in March 2007. In fact, Resa testified, in October 2008, that she had been in the custody of the State, in one form or another, for all but one month of S.B.R.'s life.

Resa testified about the efforts she had made in changing her lifestyle. She had completed one of the parenting courses that the Department had sent her. Resa had also enrolled in and completed another parenting type course while at the SAFP facility. At the time of trial, she was in a halfway house and had just obtained a job. Resa's plans for her son were to move either to Bryan, Texas or Fredericsksburg, Texas. Her logic was that she needed to be out of her hometown because of her history of drug involvement. Yet, when questioned further about her plans, Resa stated she still needed a few more months before she would be prepared to care for the child.[6] Resa contends that she did not finish the service plan presented by the Department because she either had no ability to complete the requirements while incarcerated or she had no postage with which to return

---

[6] On the date of the final hearing, Resa was still required to serve a minimum of two more months at the halfway house.

the materials furnished. At least one of the case workers testified that the materials she sent to Resa included return envelopes with postage attached.

When we review this evidence in the light most favorable to the judgment, we conclude that the evidence was such that the trier of fact could form a firm belief or conviction about the truth of the allegations lodged against the parent. See In re J.F.C., 96 S.W.3d at 265-66. Looking at the evidence in the light most favorable to the judgment means that the reviewing court must assume the fact finder resolved disputed fact issues in favor of its finding if a reasonable fact finder could do so. Id. at 266. The trial court heard the conflicting testimony and was in the best position to judge the credibility of the witnesses and we will not attempt to reweigh that evidence. See In re J.P.B., 180 S.W.3d at 573. The trial court could simply have accepted the version of the facts presented by the Department's witnesses. We cannot say such a determination would be unreasonable. Id. While making this determination on credibility, the trial court had Resa's refusal to take a drug test to consider. It is not unreasonable for the trial court to take this refusal into consideration in making a credibility determination. There is also the issue of all of Resa's activities prior to the birth of S.B.R. The trial court was entitled to consider that activity in making its judgment. See In re T.N., 180 S.W.3d at 383. Finally, there was considerable testimony about Resa's criminal past. While imprisonment alone will not support termination of a parent's rights, see Boyd, 727 S.W.2d at 533, when imprisonment is coupled with a course of conduct, as here, that includes drug usage, there is evidentiary support for a decision to terminate. See In re K.C., 23 S.W.3d at 608. After considering all of these factors, we overrule Resa's challenge to the legal sufficiency of the evidence

10

to support the trial court's judgment that she engaged in conduct which endangered the physical or emotional well-being of the child.

As to the factual sufficiency challenge to the trial court's judgment, our review leads to the conclusion that, even when we view the evidence in a neutral light, the fact finder could have reasonably formed a firm belief or conviction of the truth of the allegations. See In re S.M.L.D., 150 S.W.3d at 757. However, we must give due deference to the fact finder's findings and not supplant the fact finder's judgment with our own. See In re H.R.M., 209 S.W.3d at 108. The entirety of this record demonstrates a failure on Resa's part to understand how her decisions had adverse effects on her child. The record clearly demonstrates continuous involvement with the criminal justice system that resulted in little or no stability in the home. See In re T.N., 180 S.W.3d at 383. Further, her use of drugs, especially during her pregnancy, is an action that has an adverse affect on the physical and emotional well-being of the child. See In re K.C., 23 S.W.3d at 608. Accordingly, Resa's factual sufficiency challenge to the trial court's judgment that she engaged in conduct which endangered the physical or emotional well-being of the child is overruled.

When multiple grounds for termination are alleged, only one finding under section 161.001(1) is required to terminate parental rights. See In re T.N., 180 S.W.3d at 384. Having found that the evidence was both legally and factually sufficient to support the trial court's judgment as to termination, we need not address Resa's issues regarding the other grounds for termination found in the judgment. Id. Therefore, we next turn to the best interest of the child. See § 161.001(2).

11

Best Interest of the Child

Resa next contends that the evidence was factually insufficient to support the trial court's finding that termination was in the best interest of the child. This issue was not, however, described as a possible point of error in her notice of appeal.[7] The record reflects that the notice of appeal contained six possible points that Resa was desiring to appeal. None of the six could be read as contesting the factual sufficiency of the evidence to support the decision that termination was in the child's best interest. The requirement of section 263.405(i) is that a party must include in a statement of points all issues that they desire to appeal. See § 263.405(i). If an issue is not included, the appellate court may not consider the issue. Id. Inasmuch as the issue was not listed on the statement of points filed with the notice of appeal, nothing has been preserved for appeal. See In re R.C., 243 S.W.3d 674, 676 (Tex.App.–Amarillo 2007, no pet.). Accordingly, we overrule Resa's fifth issue.

Conclusion

Having determined that the evidence was legally and factually sufficient to support termination on the basis that Resa engaged in conduct that endangered the physical and emotional well-being of the child and that nothing was preserved for appeal as to the best interest of the child, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

---

[7] Resa's statement of points for appeal was contained within her notice of appeal.