

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00087-CV

_____

IN THE INTEREST OF B. C., T. P., C. P., AND T. P., CHILDREN

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 2011-458

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

In a suit brought by the Texas Department of Family and Child Protective Services (Department), the parental rights of the Mother pertaining to her children, B.C., T.P.1, C.P., and T.P.2, were terminated, and the parental rights of the Father to the children, T.P.1, C.P., and T.P.2, were terminated.[1] As mentioned hereinafter, the trial court found that the evidence clearly and convincingly proved that Mother and Father (1) had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, (2) had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, and (3) had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O) (West Supp. 2012). It also found termination to be in the best interests of the children.

On appeal, Mother and Father challenge the legal and factual sufficiency of the evidence as to the first two grounds for termination mentioned above. We affirm the trial court's judgment of termination.

---

[1]For purposes of confidentiality, the children will be referred to as B.C., T.P.1, C.P., and T.P.2. The mother of the children will be referred to as Mother, the father of T.P.1, C.P., and T.P.2 as Father. B.C.'s biological father (to whom we refer as "Justin" and whose parental rights were terminated in the same action from which this appeal arises) did not join in the appeal; accordingly, the question of his termination is not before us. TEX. R. APP. P. 9.8. "Father" has no parental rights to B.C., and in the circumstances where we hereafter discuss parental rights to B.C. generically as one of the "children," the application is necessarily limited to B.C.'s relationship to "Mother." At the time of the termination hearing, B.C. was nine years old, T.P.1 was four, C.P. was three, and T.P.2 was two.

**Factual History**

The attention of the Department was first directed toward this family in February 2011, after the Department received a referral stemming from a December incident where a dog had been reported to have attacked one of the children. A Department supervisor, June Tyler, testified that the Department ruled out parental neglect concerning the attack. However, the Department had two remaining concerns: (1) whether the children were properly supervised while playing outside; and (2) the children were not current on their immunizations. Tyler also entertained concerns about Father's ability to care for his children due to his disability and about the "unmet medical and mental health needs" of Mother. There was apparently some concern about substance abuse by both of the parents.

The trial court ordered both parents to abstain from drugs and alcohol, submit to psychological and drug assessments, attend counseling sessions, attend parenting classes, attend the meetings of Narcotics Anonymous (NA) at least once per week, and obtain and maintain stable employment.

In March 2011, Mother and Father began the Department's prescribed counseling through the Family-Based Safety Services (FBSS) program, though they later (advising Tyler that they did not need counseling) ceased attendance at counseling and parenting classes. Father was then arrested and incarcerated for a month due to a violation of his community supervision on a criminal violation not directly related to the children. Tyler testified that the family experienced an inability to pay rent and were forced to move repeatedly and that Mother and Father made little or no progress completing the Department's prescribed counseling and

3

parenting services. The couple had to get help from a local church to repair their car and find a place to live.

About six months later, in June 2011, it came to the attention of the Department that both Mother and Father had been arrested in neighboring Rains County for public intoxication. Joel Williams, a Department investigator, testified that he had been called by authorities after the couple had been found (apparently intoxicated) with their car on the side of the road with the children inside the automobile. Because the parents each appeared intoxicated and the police could not determine who had been driving the car, both parents were arrested for public intoxication. Williams found reason to believe that the parents were negligent in their supervision of the children because both were intoxicated in the circumstances as described and even though all four children were in the car, there was only one car seat.

The children were placed with the children's paternal grandmother for a month before being placed with their aunt and uncle for more long-term care. Williams explained to Mother and Father that the placement agreement provided that the grandmother would care for the children "for a duration of time until the parents could get with their [FBSS] caseworker and make sure that the appropriate safety measures were being taken."

Tyler was unsuccessful in attempts to persuade Mother and Father to participate in and complete the parenting classes and counseling; after the arrests for public intoxication, Tyler determined that "there was no longer anything [FBSS] could do for them." She also had concerns regarding the couple's previous drug and alcohol history. As a part of that history, Tyler pointed out that in 2006, Mother was found passed out behind the wheel of a car with B.C.

4

in the vehicle and in 2009, Father had been charged with possession of marihuana. Tyler testified, "My concern was that although we were offering services and intervening, they were found on the side of the road intoxicated, still putting their children in the same situation that they've been on probation for. . . . They're not showing anything they learned from probation or benefiting from what we're trying to offer." On August 21, 2011, the Department filed a petition to remove the children.

Department case worker Julie Tolsom was assigned to the case. She testified that Mother and Father had completed their parenting classes, but they did not participate in their court-ordered counseling. Mother testified that she attended all her counseling sessions, though she did miss some when her grandmother passed away. Mother said she was released from counseling. Tolsom pointed out that during some of the sessions which Father attended, he simply slept on the couch rather than participating.

Father failed to obtain a psychological evaluation as he had been ordered, although Mother submitted to hers. Although Mother was required to maintain appointments with her psychiatrist and to take her medication, she only attended six sessions; despite the fact that Mother had said she was taking her medications, Tolsom was unable to verify that she had. Mother testified that she was taking her medications and had shown her counselor the bottle.

The couple were also required to attend NA meetings, and, according to Tolsom, Mother and Father provided proof that they attended NA meetings four or five times per month from early January 2012 through the end of June 2012. Although Tolsom testified as to skepticism over the regularity of attendance by both Mother and Father at these meetings, Mother and

5

Father attempted to show efforts at compliance. Overall, the evidence was not overwhelming in favor of either position.

Mother and Father told Tolsom that they had finished a drug and alcohol assessment, but they never provided the proof of the assessment that they were required to provide. Tolsom testified that during the case, Mother tested positive for the use of cocaine, Father was arrested for driving while intoxicated (DWI), and both Mother and Father had tested positive for the use of marihuana.

Father was employed "on and off throughout this case," but only provided proof of employment once, a job he lost the very next week. Mother testified that "he always kept a job" and that if he was let off one job, he would go get another one. She claimed that Father's income paid all of their bills, but she also admitted that they had some financial problems.

Mother provided Tolsom with proof that she was employed at the Subway sandwich shop in Quitman, Texas, as of July 25, 2011, but she was "let go" in October and failed to inform Tolsom of that fact. Mother told Tolsom that she had gotten another job at a Subway in Winnsboro, Texas, but she never provided Tolsom with verification of the employment, and Mother said she had to leave that job because they were not allowing her to work enough hours. Tolsom indicated that Mother had told her that she did not see any reason to look for another job, but Mother denied ever having made that statement. Tolsom had never been made aware that Mother held any other jobs. Mother testified that she had worked on some occasions with her father doing tree service work.

6

Mother and Father were unable to maintain stable housing. They moved at least five or six times during the pendency of the Department's case. If they had an appropriate home for the children to live in at the time of the termination hearing, Tolsom was unaware of it. Tolsom believed that the termination of Mother and Father's parental rights was in the best interests of the children. Tolsom testified that Mother and Father were bonded with the children and vice versa.

Amy McDonald, a case supervisor for the Court Appointed Child Advocates (CASA), was the guardian ad litem for the children. In her opinion, termination of the couple's parental rights was in the best interests of the children. She noted that their case had been open for two years and no significant progress for the benefit of the children had been made—"[t]hey have no home, no income, no ability to provide for the kids." When the children first came into foster care, they had "significant behavioral and developmental issues." Mother and Father both failed to comply with the court's orders regarding their service plan. In her opinion, the actions of Mother and Father endangered the children throughout the pendency of the case. Due to the ongoing alcohol and drug use of the parents, she believed the children would be substantially harmed if they were placed back in the home of Mother and Father.

Father testified that at the time of the termination hearing, he was incarcerated for violation of the terms of community supervision upon which he had been placed after a charge of criminal mischief. He admitted that there were also charges pending against him in Upshur County, Texas, for DWI and evading arrest. Regarding the June 2011 public intoxication incident, he testified that he had been driving with Mother, but had only consumed one-half of a

7

beer and he claimed he was not intoxicated. However, he pled guilty to the charge and was sentenced to time served.

Father admitted that he refused to submit to the psychological assessment and testified that while he attended some of the counseling sessions, he "kept losing jobs with all the stuff [he] had to do." He did not have a car and found attending the classes and counseling sessions to be difficult. At the time of the hearing, he was employed with a construction job. He admitted that he had not ceased drinking and still did not have a stable home or income for the children. However, he testified that he had enough money to pay his bills, and the only reason they kept moving was because he was trying to find a home that would satisfy the demands of the Department. At the time of the hearing, although Father was incarcerated, Mother was living at the home of his mother.

After listening to the evidence, the trial court found it supported the statutory grounds for termination and determined that termination was in the children's best interest.

**Analysis**

*Sufficient evidence supports termination*

The trial court found by clear and convincing evidence that Mother and Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children (TEX. FAM. CODE ANN § 161.001(1)(D)); engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children (TEX. FAM. CODE ANN. § 161.001(1)(E)); and failed to comply with the provisions of a court order that

8

specifically established the actions necessary for them to obtain the return of the children (TEX. FAM. CODE ANN. § 161.001(1)(O)). The trial court also found that termination of the parental relationships was in the best interests of the children.

On appeal, Mother and Father argue that the evidence is legally and factually insufficient to support the trial court's findings under Section 161.001(1)(D) and (E), and the finding that termination is in the children's best interests.

"Along with a best interest finding, a finding of only one ground alleged under Section 161.001(1) is sufficient to support a judgment of termination." *In re D.W.*, 353 S.W.3d 188, 194 (Tex. App.—Texarkana 2011, pet. denied) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.G.*, 350 S.W.3d 338 (Tex. App.—Fort Worth 2011, pet. denied)). Here, the parents failed to challenge the trial court's findings under Section 161.001(1)(O). Therefore, we must accept and affirm the trial court's factual findings under subsection (1)(O) (i.e., that Mother and Father failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of children in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents under Chapter 262 for the abuse or neglect of the children). *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Based upon that established finding, we must affirm the trial court's order of termination if termination is in the children's best interests.[2]

---

[2]Because the parents failed to challenge the trial court's findings under Section 161.001(1)(O), we need not determine if the trial court's findings under subsections (1)(D) and (E) are also supported by legally and factually sufficient evidence.

In determining the best interests of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child neither requires proof of any unique set of factors nor limits proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). There is no requirement that the party seeking termination prove all nine factors. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The analysis of evidence relating to one factor may be adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.). Evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28. The *Holley* test focuses on what is in the best interest of the child, not on the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Amy McDonald, the CASA supervisor over this case, spoke with nine-year-old B.C., who indicated a desire to live with Mother and Father. According to McDonald, the other

10

children were too young to understand the import of the court proceedings. Tolsom testified that termination would be hard on the children emotionally, "[p]robably more than hard[,]" and that the children and both parents are bonded. Tolsom went on to relate that the children "have psychiatric needs. They have emotional needs that cannot be addressed without them having a family." When the children were placed with a relative, that relative subsequently requested that the Department retrieve the children because they were disruptive (the behavior of the children being a factor in the failure of the Department to achieve a long-term placement of the children). Tolsom testified, nonetheless, that in the current placement, the "children's psychiatric issues have been addressed, and they're doing really well."

Evidence concerning the poor parenting abilities of Mother and Father and their failure to make use of available programs suggests that termination is in the children's best interests. The record reveals that both parents continued to use illicit drugs and alcohol, even after they were made aware that their parental rights were in jeopardy.[3] At the time of the termination hearing, Father was incarcerated for an alcohol-related community supervision violation, a situation that would render him unable to care for the children if they were returned to him.[4] During the Department's case, Mother tested positive for use of cocaine and both parents tested positive for marihuana use. Also during the Department's case, Mother and Father were arrested for public intoxication after they were found with the children in a car on the side of the road, the car not

---

[3]Parental drug abuse is a factor in analysis of a child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.).

[4]A parent's inability to provide adequate care for his children, lack of parenting skills, and poor judgment may be considered when looking at the children's best interests. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).

being equipped with necessary safety equipment for transport of the children. During the period of time when the children had been removed from the home, Tolsom drove the parents from her office to visit the children in Tyler, Texas. Upon returning, the parents got into their own vehicle and drove away only to be stopped by the police a short distance away and arrested because Father had an open alcohol container in the car and Mother had an outstanding warrant for failure to appear. While Mother has made some progress in counseling and proper medication, Father has refused to quit drinking and to submit to the prescribed alcohol and drug assessment.

Both Mother and Father completed the court-ordered parenting classes, but there is evidence that the Father's employment is sporadic and the Mother is unemployed. The parents are unable to provide a stable home, having moved several times during the Department's case. At the time of the final hearing, Father was incarcerated and Mother was residing in the home of her mother-in-law. The fact that neither parent was able to point out any kind of specific plan for the children if they received custody weighs in favor of termination. *See In re S.M.L.D.*, 150 S.W.3d 754, 761 (Tex. App.—Amarillo 2004, no pet.). Although the children were in what was designated as a "foster/adopt home," the adults in that home were unwilling to adopt the four children; hence, the children were not then in an adoptive or long-term placement, although the Department was seeking a single adoptive placement for all four children.

Based upon this fact circumstance, a fact-finder could have formed a firm belief or conviction that termination of Mother's and Father's parental rights was in the best interests of the children. Accordingly, we hold that the evidence is legally and factually sufficient to support

12

the trial court's finding that termination of their parental rights was in the children's best interests.

We affirm the trial court's order of termination.

Bailey C. Moseley
Justice

Date Submitted:     December 4, 2012
Date Decided::      January 9, 2013