

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-13-00429-CV
_____

IN THE INTEREST OF K.R.M., A CHILD

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 11,352, Honorable Jack M. Graham, Presiding

March 17, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

C.M. appeals from an order terminating his rights to his child, K.R.M. Via a single issue, he contends that the evidence was legally and factually insufficient to support a finding that it was in the best interest of the child to terminate his parental rights. We affirm.

To warrant termination, the State must prove both a statutory act or omission under section 161.001(1) and that termination of the parent-child relationship is in the best interest of the child. *See In re I.G.,* 383 S.W.3d 763, 769 (Tex. App.—Amarillo 2012, no pet.); *Yonko v. Dep't of Family & Protective Servs.,* 196 S.W.3d 236, 242 (Tex.

App.—Houston [1st Dist.] 2006, no pet.).  The latter element is the only one at issue here.  Furthermore, we recognize the existence of a strong presumption that maintaining the relationship serves the child's best interest, and the burden lies with the State to rebut it.  *In re T.N.,* 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.); *In the Interest of S.M.L.*, 171 S.W.3d 472, 480 (Tex. App.—Houston [14[th] Dist.] 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14[th] Dist.] 2003, pet. denied).

Next, in reviewing whether the second prong of the test (*i.e.* best interest of the child) warranted termination, we consider a myriad of factors.  They include 1) the desires of the child; 2) the present and future physical and emotional needs of the child; 3) the present and future emotional and physical danger to the child; 4) the parental abilities of the persons seeking custody; 5) the programs available to assist those persons seeking custody in promoting the best interest of the child; 6) the plans for the child by the individuals or agency seeking custody; 7) the stability of the home or proposed placement; 8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and 9) any excuse for the parent's acts or omissions.  *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976); *In re S.M.L.D.*, 150 S.W.3d 754, 759 (Tex. App.—Amarillo 2004, no pet.).  This list is not exhaustive, nor is evidence required on all nine factors to support a finding to terminate a parent's rights.  *Holley*, 544 S.W.2d at 372; *In re S.M.L.D.*  150 S.W.3d at 759.  With these considerations in mind, we review the evidence below.

C.M. testified at the final hearing.  At the time, he was incarcerated in the Plainview State Jail.  According to the evidence, he had been indicted for possessing

drugs, granted deferred adjudication, and placed on probation. However, that probation was subsequently revoked due to his continued drug use and failure to perform other conditions of his community supervision. Apparently, C.M. resumed his drug habit about a month after leaving his rehabilitation program.

He further admitted that he did not perform many requirements of the service plan created to regain custody of his child prior to his incarceration. Those deficiencies included the failure to attend counseling, attend parenting classes and undergo psychological testing. Nor had he visited K.R.M. for almost a year because he had been "strung out" on drugs and methamphetamine was the drug he used daily. So too did he sell it. Another reason given for failing to visit his son involved his lack of transportation.

So too was C.M. homeless at times. He was also jobless since 2010, though there were several months during that period when he worked construction. C.M., however, believed he did not have to work since he was "strung out on drugs." Nor did he provide financial support for his child. His problems with the law, his inability to perform parenting duties, and his inability to complete his service plan related to his drug use, according to C.M. Though, he also testified that he planned to clean himself up and wished to be involved in his son's life once he left jail.

The child's mother testified that 1) K.R.M. was removed from the home when another child died; 2) she and appellant both used drugs; 3) she underwent drug rehabilitation for approximately seven months; 4) she performed all of her services with the exception of finding a stable home; and 5) appellant was a good father when sober.

3

Other evidence indicated that K.R.M. was in a foster home in Lubbock, Texas, that the child suffered from asthma and needed medication to treat it, that the child was currently receiving the needed medical attention, and that he had not bonded with C.M. That the department's goal consisted of reuniting the child with his mother also finds evidentiary support.

An investigator with the department testified that 1) he had removed K.R.M. from the home when the child's sibling died of pneumonia; 2) he believed that both the parents were using drugs at the time; 3) C.M.'s rights should be terminated; 4) C.M. was unable to provide K.R.M. a safe or stable home; 5) C.M. had substance abuse issues that had to be addressed; 6) C.M. usually waited until being jailed to address his addiction; 7) the child has health issues that required appointments and physical therapists; and 8) appellant would be unable to make scheduled visits or provide necessary prescriptions.

When reviewing the legal and factual sufficiency of the evidence, we abide by the standard of review discussed in *In re D.S.*, 333 S.W.3d 379, 383 (Tex. App.—Amarillo 2011, no pet.) Per that standard, we review the evidence.

Returning to the record before us, we first note that appellant was found to have committed acts warranting the termination of his parental rights. Several involved his knowingly endangering his son. More importantly, he does not contest that, and those circumstances can be considered in assessing the child's best interest. *In re D.S.*, 333 S.W.3d at 384.

We also note that C.M. was afforded opportunity to be a father to the child. Yet, he eschewed it. Instead, he resumed his drug use, provided no support for his child,

4

and avoided counseling, parenting classes, and psychological testing. And rather than obtain legitimate employment, he sold drugs to obtain more drugs for himself. This history tends to render hollow his suggestion that he will change. *See A.S. v. Tex. Dep't of Family & Protective Servs.,* 394 S.W.3d 703, 714 (Tex. App.—El Paso 2012, no pet.) (recognizing that past conduct may be viewed as indicative of future conduct).

Nor does his suggestion that the department's goal of reuniting the child with his mother hold much sway. That one parent may have been afforded another chance to be a parent does not mean both must. *C.V. v. Tex. Dep't of Family & Protective Servs.,* 408 S.W.3d 495, 505-506 (Tex. App.—El Paso 2013, no pet.). C.M.'s own conduct and circumstances are determinative. *See id.* at 506 (wherein the court rebuffed a like argument levied by the child's mother by saying that the mother's conduct, behavior, reasons, and circumstances determine whether her parental rights should be terminated).

The child is currently in foster care. His needs are being addressed without the presence of his father who endangered him. Based upon our review of the entire record, we conclude that a fact finder could reasonably form a firm conviction or belief that the termination of appellant's parental rights would be in the child's best interest. The evidence is legally and factually sufficienct to support the trial court's finding, and appellant's sole issue is overruled.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

5