

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-14-00395-CV

IN THE INTEREST OF L.L., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 82,798-E, Honorable Douglas Woodburn, Presiding

February 4, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

A.L. appeals from the termination of his parental rights to his two-year-old daughter L.L.[1] He does so by contesting the sufficiency of the evidence to support the statutory grounds of termination as well as the finding that termination was in the best interest of the child. We affirm the order.

The standard of review is that set forth in *In re K.M.L.,* 443 S.W.3d 101 (Tex. 2013). The evidence must be of such quantum that a fact finder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. *Id.* at 112. Furthermore, only one statutory ground is needed to

---

[1] The parental rights of the mother were previously terminated.

support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). One of the grounds relied upon by the trial court was that A.L. engaged in conduct or knowingly placed his child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (West 2014).

To "endanger" means to expose to loss or injury; to jeopardize. *In re S.M.L.D.*, 150 S.W.3d 754, 757 (Tex. App.—Amarillo 2004, no pet.). Although the standard requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child must actually suffer injury. *Id.* Furthermore, a danger to the child's well-being may be inferred from parental misconduct. *Id.* Finally, an inquiry under section 161.001(1)(E) focuses upon the conduct of the parent, including the parent's actions or omissions or failures to act. *Id.*

*Statutory Ground*

The evidence shows that L.L. was removed from her mother's care at birth on August 22, 2012 because both the mother and baby tested positive for methamphetamine and marijuana. The mother had another child that was being raised by a relative. A.L. also tested positive for those drugs, and told the caseworker that he had been smoking methamphetamine daily up until a week before the birth of the child. A service plan was filed for A.L. on October 1, 2012. Pursuant to it, A.L. was to maintain contact with the Department of Family and Protective Services (the Department), and complete counseling, marriage counseling, drug rehabilitation, a batterer's intervention prevention program, a psychological evaluation, and parenting

2

classes. While the plan was pending, A.L. 1) maintained only sporadic contact with the Department, 2) was arrested and placed in the Potter County jail in December 2012 after having been stopped by police with drugs and a gun in his vehicle, 3) arrested and placed in the Randall County jail in March 2013 having been stopped by police for unauthorized use of a motor vehicle, 4) attended several drug rehabilitation programs but did not complete them, 5) told a caseworker that he had a drug problem, 6) failed to complete any of his other services, 7) did not pay child support for the child, and 8) was incarcerated at the time of the final hearing after being convicted in September 2013 of unauthorized use of a motor vehicle and possession of a controlled substance (for which he received an eight-year prison sentence for each offense). Appellant also had a 2005 conviction for burglary of a habitation and a 2007 conviction for robbery; each of those convictions was followed by confinement in prison for two and four years, respectively.

In assessing whether A.L. engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, we may consider parental conduct either before or after the child's birth. *In re A.L.W.*, No. 02-07-342-CV, 2008 Tex. App. LEXIS 2852, at *14-15 (Tex. App.—Fort Worth April 17, 2008, no pet.) (mem. op.); *accord In re J.O.A.*, 283 S.W.3d 336, 345-46 (Tex. 2009) (stating that the "endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage"). We may also consider drug use by the parent. *In re J.O.A.*, 283 S.W.3d at 345-46. And, while imprisonment, alone, does not support a finding of endangerment, evidence that includes the imprisonment of the parent and

3

demonstrates a course of conduct that has the effect of endangering the child's physical or emotional well-being supports a finding of endangerment. *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 534 (Tex. 1987); *In re C.A.B.*, 289 S.W.3d 874, 886 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Both parents were using drugs prior to the birth of the child, and the child tested positive for methamphetamine and marijuana at birth. A.L. admitted that since 2005, he has been incarcerated more time than he has been free. Moreover, he had continued to commit criminal offenses since the child's birth, continued to use drugs, and failed to support the child. There is no evidence that he had the ability to provide the child with stable housing or other necessities even during the times he was not incarcerated. This evidence is of such quantum that a fact finder could reasonably form a firm belief or conviction that A.L. engaged in conduct or knowingly placed his child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. It supports a finding of a voluntary, deliberate, and conscious course of conduct warranting termination. *See In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014) (holding that a voluntary, deliberate, and conscious course of conduct is required and that conduct which subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being).

*Best Interest*

In determining the best interest of the child, we consider among other things, 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist

4

those individuals to promote the best interest of the child, 6) the plans for the child by those individuals or by the agency seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.—Amarillo 2003, no pet.). The list is not exhaustive, and each factor need not support termination. *In re C.J.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied). Moreover, the same evidence illustrating the statutory grounds in support of termination may be probative of the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In addition to the evidence we have already recited, there was evidence that the child lives in the home of a maternal cousin, has been there since October 2012, is bonded to the family, is thriving, and is developmentally on target. Other evidence discloses that the child does not know her biological father.

A.L. wants the child to remain in her current placement, but wants to have a relationship with the child when he is released from prison. Yet, the current foster parent, who happens to be a relative of A.L., opined that termination of the relationship is best for the child.

Other evidence also illustrates that A.L. may have a parole hearing in January 2015. However, he has had one before without encountering success. So too did he admit that there was no assurance he will be paroled. And, while he testified that he has a job waiting for him when he is released from prison, we are not cited to evidence of where his prospective employer appeared at trial and confirmed that representation.

Taken as a whole, the foregoing is evidence is of such quantum that enables a fact finder to reasonably form a firm belief or conviction that termination of the parental relationship is in the best interest of the child here. The child's need for stability does not require her to wait longer than the two years she already has for her father to attempt to demonstrate an ability to actually care for her.

Accordingly, the order of termination is affirmed.


Per Curiam