NO. 07-12-0234-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 18, 2012

_____

IN THE INTEREST OF K.A.S., A CHILD
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 80548-E; HONORABLE DOUG WOODBURN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Sammuel,[1] appeals the trial court's order terminating his parental rights to his son, K.A.S. He asserts the evidence was legally and factually insufficient to terminate his parental rights and termination of his rights is not in the best interest of K.A.S. We affirm.

**Background**

The child the subject of this proceeding is K.A.S., a male born in September 2010. Sammuel was adjudicated his father in March 2012. K.A.S. is presently two

---

[1]To protect the parents' and children's privacy, we refer to Appellant by his first name and other interested parties by their initials. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2012). *See also* Tex. R. App. P. 9.8(b). Throughout the remainder of this opinion, provisions of the Texas Family Code will be cited as "section ___" and "§ ___."

years old. The Texas Department of Family and Protective Services (the Department) originally became involved when Sammuel, K.A.S. and his mother, Destiny, all tested positive for a controlled substance at the time of his birth. Initially, K.A.S. was voluntarily placed in the custody of relatives; however, on March 1, 2011, Sammuel reported that the placement relatives were themselves using controlled substances.

On March 31, 2011, the Department filed its *Original Petition* seeking appointment as K.A.S.'s temporary sole managing conservator and termination of Sammuel's parental rights.[2] In the supporting affidavit, the Department's caseworker stated Sammuel had tested positive for controlled substances since his child's birth and also acknowledged that his family members with whom he and K.A.S. had been living were using drugs. Four extended family members subsequently failed to comply with the Department's request for drug screens and an additional family member tested positive for marijuana. Two other family members acknowledged using marijuana.

Prior to K.A.S.'s removal, Sammuel had pled guilty to hindering the apprehension of a known felon (K.A.S.'s mother),[3] a third-degree felony with a range of two to ten years confinement, and received deferred adjudication. In March, Sammuel tested positive for marijuana and cocaine at a drug screening performed at the request of his community supervision officer, Nolan Massey. As a result, Sammuel was placed in an out-patient substance abuse program.

---

[2]The *Original Petition* also sought to terminate the parental rights of K.A.S.'s mother. His mother subsequently executed an affidavit voluntarily relinquishing her parental rights.

[3]*See* Tex. Penal Code Ann. § 38.05(a), (d) (West 2011). She was subsequently sentenced to two years confinement for possession of a controlled substance.

In April 2011, the Department met with Sammuel and created a Service Plan. Sammuel signed the Plan and it was subsequently filed as a court order. The Plan required him to complete counseling (psychological and parenting), a drug and alcohol assessment, and substance abuse treatment. The Plan further required him to maintain stable housing, provide pay stubs from work and refrain from engaging in a drug lifestyle.

In May 2011, Massey terminated Sammuel's participation in the out-patient drug treatment program and filed a report of violation of the conditions of Sammuel's community supervision. He was incarcerated from May 2011 until early November 2011. Massey testified at the final hearing that after Sammuel was released, he did not work any required services even though he was capable of doing so. Sammuel also began supervised visitations with K.A.S.

In early December, Sammuel began counseling sessions with Steve Jennings. Their goals were to work on home stability, gainful employment and drug awareness. In mid-December, Sammuel tested negative for controlled substances but admitted to continued alcohol use, a violation of his community supervision conditions. Sammuel attended four of six sessions and cancelled three sessions indicating he did not have transportation. During the sessions, he admitted his drug of choice was marijuana, that he had two positive tests for controlled substances, and that he had missed drug screenings required by the Department. Jennings opined during the final hearing that Sammuel attended one session under the influence of marijuana. Jennings testified Sammuel appeared at his counseling session emitting a strong odor of marijuana, his eyes were red, appeared disheveled and couldn't keep track of what he was talking

3

about. Jennings also testified Sammuel did not reach their goals and recommended more services--individual counseling and classes with the Amarillo Council on Alcoholism and Drug Abuse. He also recommended that reunification with K.A.S. not occur until Sammuel could establish a safe and consistent environment for the child.

In January 2012, Sammuel failed to appear for a scheduled drug test requested by the Department. In February, after some assessment, the Department performed an evaluation. Although Sammuel completed an assessment and underwent drug and alcohol treatment while incarcerated, he acknowledged marijuana use and did not believe his alcohol dependency was a problem. He did not complete any psychological or parenting counseling.

Also in February, Tina Frost, the Department employee responsible for supervising Sammuel's visitations with K.A.S., testified at the final hearing that Sammuel showed up at one visitation smelling of alcohol. She indicated that, during the visitations, Sammuel and K.A.S. did not bond. Although they talked and played, she testified Sammuel did not respond to K.A.S.'s complaints of a dirty diaper even though he had been instructed on how to change his diaper. Further, when Sammuel became frustrated with K.A.S., he used obscenities around the baby. After February 28, the Department could not reach him at the phone number he provided and Sammuel ceased visiting.[4]

---

[4]Katie Klaehn, supervisory caseworker, testified that, of thirty-one visitations scheduled when Sammuel was not incarcerated, there were only four visitations where he stayed the full two hours. He came late or cut ten visits short and he did not show up or cancel seventeen visits.

An Amarillo Police officer testified that Sammuel was arrested for criminal trespass at a residence after he had received a warning. The arresting officer indicated Sammuel was arguing with the owner and was intoxicated. The officer also confiscated a forty ounce container of malt liquor from Sammuel. Sammuel's probation officer subsequently filed a second report of violation based upon his arrest for trespass and Sammuel was incarcerated from March 24 to April 17.

When Sammuel was released, the Department sent him a new referral for supervised visitation but he did not call or show up for any visitations. Klaehn testified that, at a subsequent court hearing in the termination case, Sammuel attended and smelled of alcohol. In May, Sammuel was arrested for public intoxication and was incarcerated for approximately ninety days.

At the final hearing, Sammuel testified he could stay off drugs and alcohol because "he was a father." He testified that, at the time he was drinking during the termination proceedings, he knew it violated community supervision requirements and could result in imprisonment. He also indicated that he hadn't quit drinking alcohol because he "[has] never been no alcoholic or nothing like that." He admitted that, when he was released from jail, he started drinking again because "temptation is out there." He also admitted that he had consumed alcohol prior to the last court hearing in the termination case.

Thereafter the trial court issued a termination order finding that Sammuel had (1) knowingly placed or knowingly allowed K.A.S. to remain in conditions and surroundings which endangered his son's physical or emotional well-being; § 161.001(1)(D), (2)

5

engaged in conduct or knowingly placed K.A.S. with persons who engaged in conduct which endangered his son's physical or emotional well-being; § 161.001(1)(E), and (3) failed to comply with the provisions of the court order specifically establishing the actions necessary for him to obtain his son's return; § 161.001(1)(O). The trial court also determined that it was in K.A.S.'s best interest to terminate the parent-child relationship between Sammuel and his son. § 161.001(2). This appeal followed.

## Discussion

### Involuntary Termination – Standard of Review

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Consequently, termination proceedings are strictly scrutinized. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985). Parental rights, however, are not absolute and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In proceedings to terminate the parent-child relationship brought under section 161.001, the Department must establish at least one ground listed under subdivision (1) of the statute and also prove that termination is in the best interest of the child. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Though the evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See In re C.H.*, 89 S.W.3d at 28; *Holley*, 544 S.W.2d at 370. Further, due process requires application of

6

the clear and convincing standard of proof in cases involving termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 253 (Tex. 2002).[5]

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions and the role of the court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* Thus, we disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *See In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

The standard of reviewing factual sufficiency of termination findings is whether the evidence is such that a reasonable fact finder could form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.,* 89 S.W.3d at 25-26. Under that standard, we consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that

---

[5]Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* § 101.007 (West 2008). *See also In re C.H.,* 89 S.W.3d at 25-26.

7

a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Only one statutory ground is required to terminate parental rights under section 161.001. *See In re S.F.,* 32 S.W.3d 318, 320 (Tex.App.—San Antonio 2000, no pet.). Therefore, we will affirm the termination order if there is both legally and factually sufficient evidence on any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding. *Id.*

### Section 161.001(1)(D) & (E)

The trial court found that Sammuel knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered his physical or emotional well-being and also engaged in conduct or knowingly placed the child with persons engaged in conduct which endangered the child's physical and emotional well-being. *See* § 161.001(1)(D), (E).[6] "Endanger" means to expose to loss or injury--to jeopardize. *See In re J.T.G.,* 121 S.W.3d 117, 125 (Tex.App.—Fort Worth 2003, no pet.). Although "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment;" *Walker v. Tex. Dep't of Family and Protective Servs.*, 312 S.W.3d 608, 616 (Tex.App.—Houston [1st Dist.] 2009, pet. denied), danger to a child need not be established as an independent proposition but may be inferred from parental misconduct even if the conduct is not directed at the child and the child suffers no actual injury. *See Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). Moreover, the conduct does not have to occur in the

---

[6]Throughout the remainder of this opinion, section 161.001(1)(D) will be referred to as "subsection (D)" and section 161.001(1)(E) will be referred to as "subsection (E)."

child's presence; *Director of Dallas Cty. Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex.App.—Dallas 1992, no writ), and may occur before the child's birth and both before and after the child has been removed by the Department. *See In re S.M.L.D.,* 150 S.W.3d 754, 757-58 (Tex.App.—Amarillo 2004, no pet.); *In re D.M.,* 58 S.W.3d 801, 812 (Tex.App.—Fort Worth 2001, no pet.).

Under subsection (D), it is necessary to examine the evidence related to the environment of the child to determine if the environment was a source of endangerment to the child's physical or emotional well-being. *In re D.T.,* 34 S.W.3d 625, 632 (Tex.App.—Fort Worth 2000, pet. denied). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *See In re S.M.L.,* 171 S.W.3d 472, 477 (Tex.App.—Houston [14th Dist.] 2005, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *See In re J.T.G.,* 121 S.W.3d at 125 (abuse or violent conduct by a parent or other resident of home may produce an endangering environment). *See also In re W.S.,* 899 S.W.2d 772, 776 (Tex.App.—Fort Worth 1995, no writ) ("environment" refers not only to the acceptability of living conditions, but also to a parent's conduct in home). Subsection (D) permits termination based upon only a single act or omission. *Id.*

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.,* 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single

9

act or omission; a voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.; In re D.T.*, 34 S.W.3d at 634. Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.*, 171 S.W.3d at 477. Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment, and subsection (E) requires a course of conduct rather than a single act or omission. *Id.* (citing *In re J.T.G.*, 121 S.W.3d at 125). *See In re R.D.,* 955 S.W.2d 364, 367 (Tex.App.—San Antonio 1997, pet. denied).

To determine whether termination is necessary, the fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.,* 280 S.W.3d 494, 502 (Tex.App.—Fort Worth 2009, no pet.). Conduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being. *Id.; In re S.D.,* 980 S.W.2d 758, 763 (Tex.App.—San Antonio 1998, pet. denied).

**Analysis**

When K.A.S. was born, he tested positive for a controlled substance. When he was removed, Sammuel was on community supervision for hindering the apprehension of his girlfriend who was ultimately convicted of possession of a controlled substance. Sammuel and K.A.S. had been living with Sammuel's family members who were exposing K.A.S. to drugs. The same month the Department filed its *Petition* seeking emergency removal, Sammuel was screened by his community supervision officer and tested positive for cocaine and marijuana. Despite being placed in an outpatient

program for this violation of the conditions of his community supervision, he committed another violation and was incarcerated.

After he was released from incarceration which also included participation in a substance abuse program, Sammuel failed to show up for scheduled drug testing. Nor did he complete, or in most cases initiate, any services required by his Plan or his conditions of community supervision. Instead, he attended a counseling session under the influence of marijuana and visited K.A.S. while smelling of alcohol. He was subsequently arrested for criminal trespass while intoxicated and incarcerated for a violation of his community supervision conditions, released, and, approximately a month later, arrested for public intoxication and incarcerated for the second time in two months. In between his incarcerations, he did not initiate any services required by his Plan or community supervision conditions. Instead, he attended a court hearing in his termination case smelling of alcohol and, despite all this, continues to assert that he does not have an alcohol problem.

The specific danger to the child's well-being may be inferred from parental misconduct alone, including conduct that subjects the child to a life of uncertainty and instability. *Boyd,* 727 S.W.2d at 533. *See In re R.W.*, 129 S.W.3d 732, 738-39 (Tex.App.—Fort Worth 2004, pet. denied) (considering drug and alcohol abuse in endangerment finding). Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re R.W.*, 129 S.W.3d at 739. *See In re S.D.,* 980 S.W.2d at 763. "An environment which routinely subjects a child to the probability that [he or] she will be left alone because [his or] her parents are once again jailed, whether because of the continued violation of probationary conditions or because

11

of a new offense growing out of use of illegal drugs, or because the parents are once again committed to a rehabilitation program, endangers both the physical and emotional well-being of the child." *Id.* (finding violations of subsections (D) & (E)). See *In re J.T.G.,* 121 S.W.3d at 125-26.

Sammuel asserts there is no evidence he "knowingly placed or allowed [K.A.S.] to remain in conditions or surroundings which endangered the child's physical or emotional well-being" in violation of subsection (D). This assertion overlooks evidence that, after the Department's involvement at his child's birth, he lived with his son in surroundings where persons were using drugs.

Sammuel also contends there was no positive test for drug use since he tested negative in November 2011 and no evidence Sammuel's alcohol consumption was a danger to his child. We disagree. Although there was no positive test for drugs, there is evidence that Sammuel was under the influence of marijuana at a counseling session in December 2011 or January 2012; *see In re M.E.-M.N.,* 342 S.W.3d 254, 263 (Tex.App.—Fort Worth 2011, pet. denied) ("A parent's decision to engage in illegal drug use during pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being."), and failed to show up for a scheduled drug test in February 2012. *See In re K.C.B.,* 280 S.W.3d 888, 895 (Tex.App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). His alcohol dependency also played an important part in his two arrests in March and May 2012.

That he later denied using alcohol before attending a court hearing created a conflict in testimony. Given the direct testimony by an attendee at the hearing that he smelled of alcohol and two subsequent arrests where Sammuel was intoxicated, the trial court could have resolved this conflict in favor of its finding of endangerment. *See In re S.M.L.D.,* 150 S.W.3d at 758 (conflict in evidence regarding positive drug tests is one that trial court could resolve in favor of its finding).[7]

Accordingly, we find the evidence presented by the Department is more than sufficient to support a firm belief or conviction about the truth of the allegations, even when viewed in a neutral light. We further find the evidence was factually sufficient to support the trial court's judgment that Sammuel knowingly placed or knowingly allowed his son to remain in conditions or surroundings which endangered his physical or emotional well-being and also engaged in conduct or knowingly placed his son with persons engaged in conduct which endangered the child's physical and emotional well-being. *See* subsections (D) & (E). *See also Robinson v. Texas Department of Protective and Regulatory Services*, 89 S.W.3d 679, 687 (Tex.App.—Houston [1st Dist.] 2002, no pet.) (illegal drug activity coupled with a violation of community supervision after agreeing not to commit such acts in a Plan for reunification "establishe[d] clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children").

---

[7]"As in a legal sufficiency review, it is the fact finder who is responsible to resolve the conflicts in the testimony and pass upon the credibility of witnesses." *In re A.L.D.H.,* 373 S.W.3d 187, 194 (Tex.App.—Amarillo 2012, no pet.) (citing *In re R.D.S.,* 902 S.W.2d 714, 716 (Tex.App.—Amarillo 1995, no writ). Further, witness credibility issues "that depend on appearance and demeanor cannot be weighed by the appellate court." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (*per curiam*).

Inasmuch as only one statutory ground is required to terminate parental rights under section 161.001, we will omit a discussion of the Department's allegations under section 161.001(1)(O).  See *M.C. v. Tex. Dep't of Family and Protective Servs.,* 300 S.W.3d 305, 311 (Tex.App.—El Paso 2009, pet. denied); *In re M.E.-M.N.*, 342 S.W.3d at 264.  Sammuel's first two issues are overruled pretermitting his third issue.  *See* Tex. R. App. P. 47.1.

**Best Interest of the Child**

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in K.A.S.'s best interest.  While there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship*; see In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (*per curiam*),  the focus is on the best interest of the child--not the best interest of the parent.  *See Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex.App.—Dallas 1995, no writ).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.  § 263.307(a) (West 2008).

The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interests of the child.  *In re C.H.*, 89 S.W.3d at 28.  In *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), the Texas Supreme Court provided a nonexclusive list of factors that the trier of fact in a termination case may use in determining the best interest of the child.  *Id.* at 371-72.  These factors include: (1) the desires of the child; (2) the emotional and

14

physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and there is no requirement that the Department prove all factors as a condition precedent to parental termination. *Walker,* 312 S.W.3d at 619 (citing *In re C.H.*, 89 S.W.3d at 27).

Specifically, Sammuel asserts the evidence was legally and factually insufficient because he was incarcerated through much of the proceedings leaving him a limited opportunity for visitation and completion of the services required by his Plan. He also points to testimony that his supervised visits with K.A.S. went "fairly well" and he played "well" with K.A.S. Although there was no evidence that he had any current income, he testified he has qualified for social security disability income and planned for K.A.S. to live with his cousin who is caring for his ninety-two year old grandmother.

Although K.A.S. is too young to express his desires, there is evidence that he calls his foster parents "mama" and "dada." There is also evidence that, during K.A.S.'s visitations with Sammuel, there didn't appear to be any bonding and Sammuel was unresponsive to K.A.S.'s needs. Further, in the two hours or less Sammuel was in supervised visitation, he would become frustrated with his son and speak obscenities. Given K.A.S.'s age, he is unable to fend or care for himself and, as such, is physically

15

and emotionally vulnerable. Given the evidence, there is a high likelihood that, if left in Sammuel's care, he will continue to live in a highly unstable and uncertain environment. At the time of the final hearing, Sammuel was incarcerated due to repeated violations of his community supervision conditions and faced imprisonment for between two to ten years. Although he testified he had *qualified* for social security disability payments, he was unemployed, had not made any arrangements for assistance such as food stamps, had not completed high school, didn't have any stable means of transportation, had seen his child only sporadically since birth and had not shown any motivation to follow through with services for either community supervision or his Plan when he was not incarcerated. Importantly, Sammuel had not shown any desire to successfully treat his addiction to alcohol and frequently engaged in illegal conduct that violated his Plan and community supervision conditions exposing him to the likelihood of extended incarceration. Sammuel's dependency on drugs and alcohol has led to an unstable and uncertain environment for K.A.S. The future appears no better.

K.A.S., on the other hand, has been living in the same foster home since his removal. The foster parents have indicated a desire to adopt him and interact well with him. There is also evidence that K.A.S. already looks at his foster parents as being his mother and father. He is doing well and his needs are being met.

In light of all the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Sammuel's parental rights was in K.A.S.'s best interest. Accordingly, we hold the evidence is both legally and factually sufficient to support the trial court's finding that termination of his parental rights was in K.A.S.'s best interest. Accordingly, Sammuel's fourth issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice