# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00793-CV

**L. C., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
### NO. 15,254, HONORABLE CARSON TALMADGE CAMPBELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree, based on jury findings, terminating the parental rights of L.C. to her four-year-old son, S.C. In six issues on appeal, L.C. asserts that: (1) the evidence is insufficient to support a finding that termination was in the best interest of the child; (2) the evidence is insufficient to support a finding that L.C. committed three of the alleged statutory grounds for termination; (3) one of the alleged statutory grounds for termination, although supported by sufficient evidence, was based on a prior termination decree that, L.C. claims, violated her constitutional rights and thus should not have been submitted to the jury; and (4) the district court abused its discretion when it included in the jury charge an instruction that the jurors did not have to unanimously agree on the statutory ground for termination. We will affirm the termination decree.

**BACKGROUND**

At the termination hearing, the jury heard evidence tending to show that L.C. had an extensive criminal history, including multiple assaults and drug offenses. Further evidence tended to show that L.C. had, on prior occasions, placed S.C. in the care of other individuals with similar criminal histories. Also, the jury heard evidence that L.C.'s parental rights to another child had been terminated in 2007. Based on this and other evidence, which we discuss in more detail below, the district court submitted to the jury, as alternative statutory grounds within broad-form termination issues, whether L.C. had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the child's physical or emotional well-being; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the child's physical or emotional well-being; (3) had her parent-child relationship terminated with respect to another child based on a finding of endangerment; or (4) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child.[1] In addition to these alternative statutory termination grounds, the termination issue also submitted whether termination of L.C.'s rights was in S.C.'s best interest.[2] The jury found that L.C.'s parental rights to S.C. should be terminated, and the district court rendered judgment accordingly. This appeal followed.

---

[1] *See* Tex. Fam. Code § 161.001(1)(D), (E), (M), (O).

[2] *See id*. § 161.001(2).

**ANALYSIS**

**Evidentiary sufficiency**

In her first, second, and fourth issues, L.C. asserts that the evidence is insufficient to support the jury's findings on termination.[3]  Specifically, in her first issue, L.C. asserts that the evidence is insufficient to support a finding that termination was in the best interest of the child; in her second issue, L.C. asserts that the evidence is insufficient to support findings regarding the two statutory termination grounds related to endangerment; and, in her fourth issue, L.C. asserts that the evidence is insufficient to support a finding that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child.

*Standard of review*

In a termination case, we ask whether the Department proved, by clear and convincing evidence, that the parent engaged in conduct that amounts to statutory grounds for termination and that termination is in the child's best interest.[4]  Clear and convincing evidence is a heightened standard of proof that requires "the measure or degree of proof that will produce in the mind of the

---

[3]  On appeal, L.C. challenges both the legal and factual sufficiency of the evidence. However, L.C. did not file a motion for new trial in the court below, which is a prerequisite for challenging the factual sufficiency of the evidence. *See* Tex. R. Civ. P. 324(b)(2); *In re R.D.*, 304 S.W.3d 368, 370 (Tex. 2010); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re A.C.*, 394 S.W.3d 633, 639 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *In re A.J.L.*, 136 S.W.3d 293, 301-02 (Tex. App.—Fort Worth 2004, no pet.).  Moreover, L.C. does not claim that trial counsel was ineffective for failing to preserve her factual-sufficiency challenge. *See M.S.*, 115 S.W.3d at 549-50. Accordingly, we will consider only the legal sufficiency of the evidence. *See* Tex. R. App. P. 33.1(a).

[4]  *See* Tex. Fam. Code § 161.001(1), (2); *In re E.N.C.*, 384 S.W.3d 796, 802-03 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[5] On appeal, we apply a standard of review that reflects this burden of proof.[6]

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[7] "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."[8] "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible."[9] However, "[t]his does not mean that a court must disregard all evidence that does not support the finding."[10] The reviewing court must consider "undisputed facts that do not support the finding."[11] "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could

---

[5] Tex. Fam. Code § 101.007; *see C.H.*, 89 S.W.3d at 25.

[6] *See In re J.F.C.*, 96 S.W.3d 256, 264-66 (Tex. 2002).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *See id.*

[11] *Id.*

4

form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient."[12]

### *Statutory termination grounds*

Although multiple grounds were submitted to the jury in a standard broad-form question, the jury is required to find only one statutory ground in order to terminate parental rights.[13] Therefore, so long as there is sufficient evidence to support at least one of these grounds, we must uphold the jury's verdict.[14] We will focus our analysis on the ground stated in section 161.001(1)(E), which provides that parental rights may be terminated if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."[15]

"Under section 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of Appellant's conduct, including acts, omissions, or failures to act."[16] "Termination under subsection 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course

---

[12] *Id.*

[13] *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).

[14] *See A.V.*, 113 S.W.3d at 362.

[15] *See* Tex. Fam. Code § 161.001(1)(E).

[16] *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).

of [endangering] conduct by the parent is required."[17]  "The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being."[18]  In this context, "endanger" has been broadly defined by Texas courts.  Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury."[19]  "Rather, 'endanger' means to expose to loss or injury; to jeopardize."[20]  "Endangerment can occur through both acts and omissions."[21]  "[T]he conduct does not have to cause a concrete threat of injury to the child."[22]  Nor does the conduct "have to occur in the presence of the child."[23]  "And the conduct may occur . . . both before and

---

[17] *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied)).

[18] *Id.*

[19] *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)).

[20] *Id.* (citing Webster's New Twentieth Century Dictionary of the English Language 599 (1976)).

[21] *In re W.J.H.*, 111 S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Phillips v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.))

[22] *Id.* at 716 (citing *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.); *Director of Dallas Cnty. Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ)).

[23] *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Bowling*, 833 S.W.2d at 733).

after the child has been removed by the Department."[24] "If the evidence shows that the parent has engaged in a course of conduct which has the effect of endangering the child, then the finding under subsection E may be upheld."[25] "Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child."[26] This is true even when the criminal activity does not result in a final conviction.[27] "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."[28] Therefore, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."[29] Additionally, "[d]omestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment."[30] The

---

[24] *Id.* (citing *In re S.M.L.D.*, 150 S.W.3d 754, 757-58 (Tex. App.—Amarillo 2004, no pet.); *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

[25] *W.J.H.*, 111 S.W.3d at 716 (citing *D.M.*, 58 S.W.3d at 811).

[26] *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Boyd*, 727 S.W.2d at 533; *Allred*, 615 S.W.2d at 806; *Avery*, 963 S.W.2d at 553).

[27] *See In re T.G.R.-M.*, 404 S.W.3d 7 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

[28] *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)).

[29] *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (citing *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.); *Toliver v. Texas Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *R.W.*, 129 S.W.3d at 739); *see also Walker*, 312 S.W.3d at 618 ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).").

[30] *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) ("If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct.").

violence does not have to be directed toward the child or result in a final conviction—"Texas courts routinely consider evidence of parent-on-parent physical abuse in termination cases without specifically requiring evidence that the conduct resulted in a criminal conviction."[31]  Similarly, exposing one's child to the risk of domestic violence from others may also constitute endangering conduct.[32]

In this case, the Department presented evidence tending to show that L.C. had a well-documented history of engaging in criminal behavior, both before and after S.C.'s birth.  In fact, L.C. testified that she was currently incarcerated.[33]  Multiple criminal judgments and orders that had been entered against L.C. were admitted into evidence, including:  a 2001 order of deferred adjudication for the offense of assault on a public servant; a 2005 judgment revoking community supervision for the assault offense; a 2003 judgment of conviction for the offense of debit-card abuse; a 2007 judgment of conviction for the offense of assault, committed against her then-husband;[34] a 2011 judgment of conviction for the offense of failure to provide identification; a 2011 judgment of conviction for the offense of possession of marihuana;[35] a 2011 judgment of conviction for the

---

[31]  *V.V.*, 349 S.W.3d at 556 (citing *In re K.L.R.*, 162 S.W.3d 291, 305 (Tex. App.—Tyler 2005, no pet.); *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.); *In re M.R.*, 975 S.W.2d 51, 55 (Tex. App.—San Antonio 1998, pet. denied); *Allred*, 615 S.W.2d at 805).

[32]  *See In re M.R.*, 243 S.W.3d 807, 818-19 (Tex. App.—Fort Worth 2007, no pet.); *Sylvia M. v. Dallas Cnty. Welfare Unit*, 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ).

[33]  L.C. was serving a 90-day jail sentence at the time of the hearing for committing the offense of driving while license invalid.

[34]  According to the indictment in that case, L.C. had assaulted her then-husband with an iron.

[35]  According to the evidence presented, the marihuana was found in a vehicle that L.C. was driving and in which S.C. was a passenger.

offense of driving while license invalid; a 2011 judgment of conviction for the offense of credit-card abuse; a 2013 judgment of conviction for the offense of theft; and a 2014 judgment of conviction for the offense of driving while license invalid. L.C. acknowledged in her testimony that she had "a lot" of convictions.

There was also evidence tending to show that L.C. had committed other offenses in addition to the ones for which she had been convicted. Captain Farrah Ramsey of the Giddings Police Department testified that charges were currently pending against L.C. for possession of crack cocaine that had been found in her refrigerator in 2013. Ramsey also testified that the police had been called to L.C.'s residence on multiple occasions for "alleged drug activity, multiple assaults, and theft." Also, in addition to the convictions involving assaults of her then-husband and a peace officer, there was other evidence tending to show that L.C. had a propensity for violence and a lack of self-control, dating back to her teenage years, including: three physical altercations with high school classmates; lighting a girl's hair on fire; five disciplinary write-ups while she was serving time in prison; an acknowledgment to a psychologist that she was easily angered and that her responses to anger included throwing objects at people, punching walls, damaging property, and striking others; an incident in which L.C had threatened to spank her oldest child using a metal belt with brads on it and during which, according to one account, L.C. "was so angry that she was shaking and appeared to be on the edge of losing control"; an incident in which L.C. was fired from a job at Walmart for getting into a fight with a co-worker; and an incident in which she had sent a text message to a relative falsely claiming to have killed her own daughter—whom she had called a "lil bitch" in the message—because the child was "crying non-stop."

9

Other evidence tended to show that L.C. had placed S.C. in the care of individuals who had a similar history of violent and criminal behavior, including L.C.'s sister, who had multiple convictions for the offenses of assault with bodily injury, unauthorized use of a motor vehicle, possession of cocaine, assault-family violence, credit-card abuse, and assault. L.C. testified that she was aware of at least some of her sister's criminal history at the time she had placed S.C. in her care. Also, one of the assaults committed by L.C.'s sister was committed against their mother, during an incident in which, according to L.C., their mother was "choking" her sister and her sister was "doing what she had to do" to "defend herself." L.C. further testified that she had, on a prior occasion, placed S.C. in the care of her mother, who, L.C. acknowledged, had been found to have engaged in abuse and neglect of her own children and had been to prison on more than one occasion, including once for assaulting her boyfriend.

The evidence further tended to show that L.C. had a history of drug abuse. According to Dr. James Shinder, a psychologist who had performed a parenting assessment on L.C., L.C. had acknowledged to him that there was "a considerable period of time when she was smoking marihuana three to four times a day." Additionally, L.C. had once tested positive for cocaine, although she claimed that the positive test was merely the result of her handling cocaine during a period of time when she was, by her own admission, a drug dealer. Dr. Shinder testified that L.C. informed him that she had sold drugs in order "to purchase her own supply of marihuana." L.C. claimed, however, that she was no longer selling drugs. Other people with whom L.C. associated and who were in the presence of her children also had a history of drug use, including her sister and a friend named Jason Charles James, who was arrested at L.C.'s residence—while one of her other children was present—for the offense of cocaine possession.

10

Viewing the above and other evidence in the light most favorable to the jury's finding, we conclude that the evidence is legally sufficient to support a finding that L.C.'s conduct endangered the physical and emotional well-being of her child. In addition to her well-documented history of criminal conduct, the evidence also tended to show that L.C. was violent, had a history of both selling and using drugs, and had placed her children in the care of individuals with similar histories of violence and criminal behavior. All of this conduct, the jury could have reasonably inferred, subjected S.C. to a life of uncertainty and instability that jeopardized the child's well-being, and the jury was free to disbelieve L.C.'s claims that she was no longer engaged in this conduct.

Having concluded that at least one of the statutory grounds for termination is supported by legally sufficient evidence, we need not address the sufficiency of the evidence related to the other alleged grounds for termination.[36] We overrule L.C.'s second and fourth issues.

### Best interest

When deciding the best-interest issue, we consider the well-established *Holley v. Adams* factors, which include the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the party seeking custody, programs available to help that party, plans for the child by the party seeking custody, the stability of the proposed placement, the parent's conduct indicating that the parent-child relationship is improper, and any excuses for the parent's conduct.[37] The Department need not prove all of the *Holley* factors as a "condition precedent" to termination, and

---

[36] *See* Tex. R. App. P. 47.1; *Spurck*, 396 S.W.3d at 221.

[37] *See* 544 S.W.2d 367, 371-72 (Tex. 1976).

11

the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest.[38] The need for permanence is the paramount consideration when determining the child's present and future physical and emotional needs.[39] Moreover, a parent's statutorily offensive conduct is often intertwined with the best-interest determination.[40]

We begin with the evidence of L.C.'s statutorily offensive conduct, summarized above. The jury could have rationally inferred from this evidence that L.C. was a career criminal with violent tendencies and a history of drug abuse and that it would not be in the best interest of the child to be raised by such an individual, absent a showing that L.C. had turned her life around. The jury could have reasonably inferred that no such showing was made. Dr. Shinder performed a parenting assessment of L.C. in August 2014, approximately four months before the termination hearing. A report of the assessment was admitted into evidence. When asked if, based on that assessment, he had formed an opinion as to L.C.'s ability "to safely parent a 4-year old," Shinder testified, "At the time this evaluation was completed, I stated that I had great doubt about that." Shinder's assessment was based, in part, on L.C.'s extensive and varied criminal history. He testified, "It appears, in looking at the different charges she has, that she is somewhat criminally diverse. She's got family violence. She had assault. She had a theft. [There] was quite a range.

---

[38] *C.H.*, 89 S.W.3d at 27.

[39] *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Dupree v. Texas Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)).

[40] *Horvatich v. Texas Dep't of Protective & Regulatory Servs.*, 78 S.W.3d 594, 601 (Tex. App.—Austin 2002, no pet.) (citing *Holley*, 544 S.W.2d at 372; *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.)).

Credit card abuse, assault on a public servant. So there's a broad range of problematic behaviors." What also concerned Shinder was the fact that L.C. did not accept responsibility for her conduct. He explained, "She realizes that at times she is easily angered, she does overreact; but she believes that the problems she has are due more to the actions of other people and . . . not to her own actions or whatever."

Shinder also testified that L.C. lacked considerable knowledge related to first aid, child safety, and child development. He testified, "[B]asically, I had to conclude that she didn't have the parenting knowledge that would allow for her, in my opinion, to safely, independently provide care for her child at that time." He added that L.C. "has had difficulty maintaining stable housing. There have been brief periods of time where she's lived in her car and different temporary arrangements." Although L.C. had indicated to Shinder that she believed herself to be a good parent, Shinder testified that he did not believe L.C.'s assessment of her parenting skills was realistic when considered in light of her actual parenting abilities.

L.C. testified that her plan upon release from incarceration was to obtain an occupational driver's license so that she would be able to drive, go back to therapy, and complete all of the services required by the Department. In the future, she explained, she wanted to obtain stable housing, become a paralegal, and eventually become an attorney, although she was unable to provide many details regarding how she planned to accomplish these objectives, other than through prayer and relying on assistance from friends and family.

The Department's plan for S.C. was adoption by his current foster family, with whom he had already been placed for five months. Jana Haevischer, the CPS caseworker who had supervised this case, testified that the foster family wanted to adopt S.C., protect him, and had

13

indicated a "willing[ness] to sacrifice" their own well-being in order to "better" S.C.'s life and well-being. According to Haevischer, it was in S.C.'s best interest that L.C.'s parental rights be terminated so that the adoption by the foster family could move forward.

There was also evidence presented from which the jury could find that the foster parents loved S.C. and that S.C. loved them in return. The foster father testified that he and his wife both loved S.C. He explained, "I think the world of [S.C.]. I love [S.C.] as much as I love my wife, as much as I love my son. I—I couldn't love him any more if he was my biological son. He is a great child. He is loving. He's very open. He's, you know, everything you could hope to have in a child." He added that S.C. and his son "couldn't be more brothers if they had the same mother" and that they had "bonded quickly and they played together hard and they just have been inseparable since." The foster father also testified that S.C. called him "Daddy." Donna Cashion, the Court Appointed Special Advocate (CASA) representative who worked on this case, similarly testified that S.C. refers to the foster father as "daddy," the foster mother as "mommy," and his foster brother as "brudder." According to Cashion, S.C. has expressed to her a desire to continue to live with the foster family. Moreover, L.C. acknowledged in her testimony that S.C. is attached to his foster father.

Viewing the above and other evidence in the light most favorable to the jury's finding, we conclude that the evidence is legally sufficient to prove that termination of L.C.'s parental rights was in the best interest of the child. The jury could have reasonably inferred that it would not be safe for S.C. to remain in L.C.'s care, that L.C. did not have the ability to adequately care for S.C., and that S.C.'s current placement would provide a more stable and permanent environment for him. We overrule L.C.'s first issue.

14

**Jury unanimity**

We next address L.C.'s fifth issue, in which she asserts that the district court abused its discretion when it included in the jury charge an instruction that "[a]ll ten jurors do not have to agree on the same ground or grounds" for termination. We review complaints of jury-charge error under an abuse-of-discretion standard.[41] A trial court abuses its discretion when it acts arbitrarily or unreasonably, "without reference to any guiding rules and principles."[42]

The Texas Supreme Court has held that "the controlling question" in a parental-termination case is "whether the parent-child relationship between the [parent] and [her child] should be terminated, not what specific ground or grounds . . . the jury relied on to answer affirmatively the questions posed."[43] Therefore, according to the high court, broad-form submission of the termination issue does not constitute an abuse of discretion.[44] In reliance on that holding, this Court and others have repeatedly held that the law does not require the jury to unanimously agree on the statutory ground or grounds for termination, and a trial court does not abuse its discretion in instructing the jury accordingly.[45] Unless and until the Texas Supreme Court revisits its earlier holding—which

---

[41] *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 648-49 (Tex. 1990).

[42] *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. Crim. App. 2011); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

[43] *Boyd*, 802 S.W.2d at 649.

[44] *Id*.

[45] *See, e.g.*, *Click v. Texas Dep't of Family & Protective Servs.*, No. 03-10-00123-CV, 2010 Tex. App. LEXIS 8152, at *5-12 (Tex. App.—Austin Oct. 8, 2010, no pet.) (mem. op.); *Thornton v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-01-00317-CV, 2002 Tex. App. LEXIS 1386, at *10 (Tex. App.—Austin Feb. 22, 2002, pet. denied); *see also In re M.R.J.M.*, 280 S.W.3d 494, 511 (Tex. App.—Fort Worth 2009, no pet.); *In re L.C.*, 145 S.W.3d 790, 794-95

15

L.C. acknowledges it has not done—we must continue to follow this precedent. We overrule L.C.'s fifth issue.

**Prior termination decree**

In addition to the statutory grounds for termination discussed above, the district court also submitted to the jury a ground for termination alleging that L.C. had previously had her parent-child relationship terminated with respect to another child based on a finding that she had endangered that child.[46] In her third and sixth issues, although L.C. concedes that the evidence presented on this ground was "uncontested," she asserts that evidence of the prior termination decree should not have been "used at trial" and that the ground for termination based on the decree should not have been submitted to the jury because the prior decree violated her constitutional rights.[47]

---

(Tex. App.—Texarkana 2004, no pet.); *In re K.S.*, 76 S.W.3d 36, 49 (Tex. App.—Amarillo 2002, no pet.); *In re M.C.M.*, 57 S.W.3d 27, 31 n.2 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

[46] *See* Tex. Fam. Code § 161.001(1)(M).

[47] According to L.C., the prior termination decree violated her constitutional rights because she was not present at the final hearing at which her rights were terminated. Although there are some circumstances in which the termination of parental rights without the parent being present at the final hearing might amount to a due-process violation, *see, e.g.*, *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (holding that "a complete failure of service deprives a [parent] of due process" in termination proceedings), the record does not reflect that such circumstances were present during the 2007 proceedings. Although the reason why L.C. was absent from the final hearing was disputed at trial (the Department contended that, at the time of the hearing, L.C. had been released from jail on a prior assault conviction, but L.C. claimed that she was still confined on the date of the hearing as a result of a parole violation relating to an earlier offense), it was undisputed that L.C. had been served a copy of the termination petition by mail, was aware of the termination proceedings, and, in fact, had filed a pro se answer in opposition to the termination petition and had appeared pro se at a preliminary hearing in those proceedings (L.C. had been found not indigent at the time, which meant that she was not entitled to the appointment of counsel during the termination proceedings. *See* Tex. Fam. Code § 107.013(a)). Also, L.C. admitted in her testimony that she had received notice of the final hearing. The record does not reflect that she sought a continuance of that hearing.

L.C.'s complaints amount to a collateral attack on the prior termination decree entered in 2007, which, it is undisputed, L.C. did not timely appeal or challenge later via a bill of review.[48] It is well settled that collateral attacks may be brought only against "void" judgments.[49] A judgment is void "when 'the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'"[50] There is nothing in the record to suggest that the 2007 termination decree was entered under any circumstances that could enable it to be collaterally attacked in this proceeding. Accordingly, we cannot conclude that the district court abused its discretion in overruling L.C.'s objection to the inclusion in the jury charge of the statutory ground for termination based on that decree.[51] We overrule L.C.'s third and sixth issues.

---

[48] *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 270 n.1 (Tex. 2012) ("A bill of review is an independent equitable proceeding brought by a party to a former action who seeks to set aside a judgment that is no longer subject to challenge by appeal. The residual four-year statute of limitations applies to bills of review." (internal citations omitted)).

[49] *See Rivera*, 379 S.W.3d at 271; *Moore v. Brown*, 408 S.W.3d 423, 432-33 (Tex. App.—Austin 2013, pet. denied).

[50] *Rivera*, 379 S.W.3d at 271 (quoting *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)).

[51] *See In re S.A.P.*, 169 S.W.3d 685, 693-94 (Tex. App.—Waco 2005, no pet.); *see also R.F. v. Texas Dep't of Family & Protective Servs.*, 390 S.W.3d 63, 71-72 (Tex. App.—El Paso 2012, no pet.) (holding that prior judgments of conviction that are used to support termination findings cannot be collaterally attacked in termination proceedings). *Cf. E.R.*, 385 S.W.3d at 566 ("A complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time.").

## CONCLUSION

We affirm the district court's termination decree.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   June 8, 2015